**SOUTHERN PACIFIC TRANSPORTA-TION CO., a corporation; Thomas M. Tompkins, Plaintiffs–Appellants,**

v.

**PUBLIC SERVICE COMMISSION OF NEVADA; Scott M. Craigie, Fred Schmidt, Thomas E. Stephens, Jo An Kelly, Stephen Wiel, as Commissioners of Public Service Commission of Nevada; Thomas P. Wright, District Attorney of Storey County; William Rogers, District Attorney of Lyon County, Nevada, Defendants–Appellees.**

No. 88–15541.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1989.

Decided July 18, 1990.

John MacDonald Smith, San Francisco, Cal., for plaintiffs-appellants.

Neil E. Grad and William H. Kockenmeister, Carson City, Nev., for defendants-appellees.

Before POOLE, REINHARDT and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Appellants, Southern Pacific Transportation Company ("SPTC"), and Thomas M. Tompkins appeal the district court's order granting summary judgment for Public Service Commission of Nevada ("PSC"). Appellants argue that PSC regulations requiring rail carriers to obtain an annual permit prior to loading, unloading, transferring or storing hazardous material on railroad property within the state are preempted by the Hazardous Materials Transportation Act and the Federal Railroad Safety Act. They also argue that the district court failed to give sufficient deference to an inconsistency ruling by the United States Department of Transportation ("DOT") and that the PSC regulations violate the Commerce Clause. We reverse.

I

Congress enacted the Hazardous Materials Transportation Act, 49 U.S.C. App. § 1801, *et seq.* ("HMTA"), in 1975 to replace a patchwork of state and federal laws and regulations concerning hazardous materials transport with a scheme of uniform, national regulations. *Jersey Cent. Power & Light Co. v. Lacey,* 772 F.2d 1103, 1112 (3d Cir.1985), *cert. denied,* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986); S.Rep. No. 1192, 93rd Cong., 2d Sess. 1

(1974), U.S.Code Cong. & Admin.News 1974, 7669. The HMTA commences with a congressional declaration of policy:

It is declared to be the policy of Congress in this chapter to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce.

49 U.S.C.App. § 1801. Pursuant to its delegated authority, the DOT has enacted a series of comprehensive regulations governing the transportation of hazardous materials, including explosives, by rail and highway. 49 C.F.R. pts. 171–179 ("HMR").

In January, 1986, the PSC adopted a series of regulations, Nevada Administrative Code §§ 705.310 to 705.380, to ensure that loading, unloading, transfer or temporary storage of hazardous materials on a railroad's property be accomplished in as safe a manner as practical. Nev. Rev. Stat. § 223.064 Statement, P.S.C. Gen. Sess. Jan. 27, 1986. "The Commission's goal in adopting [these regulations] was to establish a procedure for consistent statewide evaluation of potential on-and-off loading and temporary storage sites for the materials listed in the regulation." *Id.*

The Nevada regulations require a carrier to obtain an annual permit prior to loading, unloading, transferring or storing certain hazardous materials on railroad property. Applicants are required to submit:

(a) A map of the proposed site for loading, unloading, storage or transfer, including the indicators of its location on the track and all structures at the site;

(b) A report identifying each switch, siding, spur or branch of track at the site and its purpose;

(c) A copy of any report made by a federal or state inspector during the preceding 6 months on defects in the track and the remedial action taken;

(d) A summary of all major construction or other work on the track at the site during the preceding year;

(e) A summary of all hazardous material carried by the railroad during the preceding 12 months;

(f) A summary of all unintended releases of hazardous material during the preceding 12 months which were reported by the applicant pursuant to 49 C.F.R. §§ 171.15 and 171.16;

(g) An outline of the procedure to be used in the loading, unloading, transfer or storage of the hazardous material;

(h) A description of the measures to be used by the railroad to ensure that the hazardous material is safe from vandalism, theft or sabotage; and

(i) An outline of all plans to be used in the event of an accident.

Nev. Admin. Code § 705.330. The application also requires a $200 fee. *Id.*

In evaluating an application, PSC considers:

1. The topography of the proposed site;
2. The proximity of the proposed site to:
   (a) Centers of population;
   (b) Heavily traveled highways;
   (c) Hospitals;
   (d) Schools;
   (e) Sources of water; and
   (f) Other sites for the storage of hazardous materials;
3. The expected duration of the operation at the site;
4. The availability of alternative sites;
5. The quality of the track;
6. The security at the site;
7. The plans to be used in the event of an accident at the site;
8. The equipment and resources available in the event of an accident at the site; and
9. Any other pertinent information requested by the Commission.

Nev. Admin. Code § 705.340. PSC is required to give notice of any application for a permit or renewal at least 30 days before the date on which it intends to take action. Nev. Admin. Code § 705.370.

Upon a showing of "compelling need," PSC may issue a temporary permit which is valid while the application for an annual permit is pending. Nev. Admin. Code

§ 705.350.1. However, this provision is of concern primarily to carriers seeking their initial permit. Others seeking to renew their permits can ensure that they do not expire prior to a determination on their applications by submitting a complete application for renewal at least 60 days before the expiration of their permits. Nev. Admin. Code § 705.350.4.

A permit may be suspended or revoked if a carrier violates the terms of the permit, if suspension or revocation is necessary to protect against risks to life or property, or if the permit was issued on the basis of false, fraudulent or misleading representations or information. Nev. Admin. Code § 705.360.

On September 15, 1986, PSC instituted criminal proceedings in the Storey County Justice Court against Thomas Tompkins, SPTC's supervisor of rail operations, for storing class A explosives at SPTC's Hafed, Nevada siding without a permit. Additional proceedings were later instituted with regard to SPTC's storage of explosives at its Wabuska siding.

On October 21, 1986, following the procedures set forth in 49 C.F.R. § 107.203, SPTC applied for an administrative ruling on the question of whether the Nevada regulations were preempted by the HMTA. On June 23, 1987, the Director of the Office of Hazardous Materials Transportation issued Inconsistency Ruling IR–19, finding Nev. Admin. Code §§ 705.310 through 705.-370 to be inconsistent with the HMTA and, therefore, preempted. PSC filed an appeal of IR–19 with the Administrator of the Research and Special Programs Administration, pursuant to 49 C.F.R. § 107.211. On April 1, 1988, the Administrator issued a decision affirming the inconsistency ruling.

On September 19, 1986, plaintiffs SPTC and Thomas M. Tompkins (collectively "SPTC") filed suit against defendants PSC, its individual commissioners, and the district attorneys of Storey County and Lyon County, Nevada (collectively "PSC"), seeking declaratory judgment and injunctive relief against the Nevada regulations. The parties filed cross motions for summary judgment. On September 28, 1988, summary judgment was entered in favor of PSC and against SPTC. Timely notice of appeal was filed by SPTC on October 24, 1988.

## II

We review a grant of summary judgment de novo. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## III

The HMTA expressly preempts state or local regulations inconsistent with federal law:

(a) Except as provided in subsection (b) of this section, any requirement, of a State or political subdivision thereof, which is inconsistent with any requirement set forth in this chapter, or in a regulation issued under this chapter, is preempted.

49 U.S.C.App. § 1811(a). Such regulations are "inconsistent" when (1) compliance with both the state or local regulation and the HMTA or DOT regulation is impossible, or (2) the state or local regulation is an obstacle to the accomplishment and execution of the HMTA or DOT regulation. 49 C.F.R. § 107.209.

In this case, the district court held that the Nevada regulations were not inconsistent with the HMTA and HMR. However, SPTC argues that the district court erred by failing to accord sufficient deference to the inconsistency ruling issued by the DOT. We agree.

The DOT found that its regulations and the Nevada regulations address many of the same matters. For instance, it found that several of its own regulations already address storage incidental to the transportation of hazardous materials, the primary

focus of the Nevada regulations. Additionally, the Nevada regulations address other matters related to the transportation of hazardous materials. Because the Nevada regulations address matters already covered by the federal regulations, impose substantial burdens on applicants, and create the risk of confusion, conflicts, and delays, the DOT determined that they were inconsistent with the federal regulations. *See* DOT Research and Special Programs Administration, Inconsistency Ruling No. IR–19, Notice of Decision on Appeal, at p. 8 (April 1, 1988).

However, the district court held that:

[t]he Nevada regulations deal primarily with the storage of hazardous materials on a railroad's property. Contrary to the Advisory Opinion of the Department of Transportation, the federal regulations do not address in any significant manner storage of hazardous materials. The federal regulations relied upon by the Department of Transportation to support its Advisory Opinion are not inconsistent with Nevada's regulations. Compliance with the Nevada regulations, which require a single annual permit designating storage locations, does not in any manner prevent the railroad from complying with the federal regulations.

The Advisory Opinion of the Department of Transportation is poorly reasoned, based primarily on speculation as to what might or might not occur in connection with the processing of a permit to obtain approved storage facilities. The Advisory Opinion is an attempt to suggest that the regulations of the Department of Transportation preempt the entire field of hazardous materials transportation. As such, the Advisory Opinion directly conflicts with Section 1811 of the HMTA wherein Congress specifically recognized that the states were free to regulate provided that such state regulation is not inconsistent with federal regulations.

■ The DOT's inconsistency rulings are not binding on the courts. However, we generally "accord deference to the construction of a statute by those charged

with its administration." *State of Cal. ex rel. Water Resources Bd. v. FERC*, 877 F.2d 743, 745 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 537, 107 L.Ed.2d 535 (1989). In fact, the Supreme Court has held that

[w]hen faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.... [Further,] [w]hen the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.

*Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see also Aluminum Co. of America. v. Central Lincoln Peoples' Util. Dist.*, 467 U.S. 380, 389–90, 104 S.Ct. 2472, 2479–80, 81 L.Ed.2d 301 (1984) ("Under established administrative law principles, it is clear that the Administrator's interpretation of the [statute] is to be given great weight.").

■ The district court failed to accord sufficient deference to the DOT's construction of its own regulations. As the DOT's inconsistency ruling noted, "transportation" subject to the HMTA includes "any movement of property by any mode, and any loading, unloading, or storage incidental thereto." 49 U.S.C.App. § 1802(6). Consequently, numerous HMR provisions address loading, unloading, and storage. For instance, with regard to loading and unloading:

(1) Section 174.16 requires certain unloading from rail cars.

(2) Section 174.55(d) regulates the loading and unloading of heavy packages and containers of hazardous materials.

(3) Section 174.67 contains detailed regulations for the unloading of tank cars.

(4) Section 174.81 requires segregation and separation of certain hazardous materials in loading.

(5) Section 174.101 prescribes detailed requirements for the loading of class A or B explosives.

(6) Sections 174.104(e) and (f) require supervision of loading of trailers and containers containing class A explosives

on flat cars, as well as certification of that supervision.

(7) Section 174.112 regulates the type of rail car in which class B explosives may be loaded.

(8) Section 174.115 prescribes requirements for the loading of class C explosives.

(9) Section 174.200 prescribes requirements for the loading of flammable gases.

(10) Section 174.201 regulates the manner in which compressed gas cylinders are to be loaded.

(11) Section 174.204 regulates the unloading of tank car deliveries of gases, including cryogenic liquids.

(12) Section 174.300 prescribes requirements for the loading of flammable liquids.

(13) Section 174.410 prescribes requirements for the loading of matches.

(14) Section 174.700 prescribes requirements for loading radioactive materials.

(15) Section 174.810 prescribes requirements for loading wet electric storage batteries.

(16) Section 174.840 regulates the loading and unloading of asbestos.

See 49 CFR §§ 174.16–174.840. Additionally, with regard to temporary storage:

(1) Section 174.14(a) requires a rail carrier to forward hazardous materials within 48 hours (excluding weekends and holidays).

(2) Sections 174.16(a) and 174.16(b) address the disposition of hazardous materials at their destination. Section 174.16(a) forbids the unloading of explosives at non-agency stations unless the consignee directly receives them or unless they are properly locked and secured storage facilities are provided. Section 174.16(b) mandates that at agency stations, carriers require consignees of hazardous materials shipments to remove them from the carriers' properties within 48 hours (exclusive of weekends and holidays) after notice of arrival. Safe storage on carrier property is a permissible meth-od of disposal if the consignee does not remove them within the specified period.

(3) Sections 171.15 and 174.750 require immediate notification of certain hazardous materials incidents and detailed reports on other rail incidents that occur in temporary storage.

(4) Sections 173.3 and 174.8 authorize DOT to inspect methods of storage of hazardous materials.

(5) Section 174.55(e) requires rail carriers to store hazardous materials securely while they are being held for loading or delivery.

(6) Section 174.81's separation and segregation requirements also apply during storage.

(7) Sections 173.447, 173.457(a) and 174.700 contain restrictions on how radioactive materials may be stored (e.g., the number of packages that may be stored in one location and the distance required between groups of packages).

(8) Section 174.102 prohibit storage of class A explosives on carrier property with certain other materials.

(9) Sections 174.101, .112, .200 and .300 prohibit storage of class A explosives, class B explosives, flammable gasses, and flammable liquids in rail cars equipped with any type of lighted heater, open flame device, or any mechanism utilizing an internal combustion engine.

(10) Section 174.450 requires that when a fire occurs in transit, shipments of cotton or charcoal must be stored under observation for a specified number of days.

(11) Section 173.314 prohibits storage in transit for compressed gases in tank cars filled to a permitted density of 58.8 percent during certain months.

See 49 CFR §§ 173.314–174.750.

At least one federal court has recently held that "[t]he extent of federal regulation in the area of transportation, loading, unloading and *storage* of hazardous materials is comprehensive." *Consolidated Rail Corp. v. Bayonne*, 724 F.Supp. 320, 330 (D.N.J.1989) (emphasis added). The court

noted with approval the DOT's inconsistency ruling which found that these regulations constitute "a comprehensive series of regulations relating to the storage of hazardous materials incidental to transportation by rail." *Id.*

Despite DOT's extensive regulation of loading, unloading, transfer and storage incidental to the transportation of hazardous materials, the Nevada regulations require a carrier to obtain an annual permit prior to engaging in these activities within the state of Nevada. The Nevada regulations, thus, create a separate regulatory regime for these activities, fostering confusion and frustrating Congress' goal of developing a uniform, national scheme of regulation. The resulting confusion is exacerbated by the fact that the Nevada regulations only apply to some of the hazardous materials covered by the HMTA and HMR and not to others. Compare 49 CFR §§ 171.8 and 174.14(a) to Nev.Admin.Code § 705.310.

The federal regulations also impose specific information and documentation requirements deemed necessary for the safe transportation of hazardous materials. *See e.g.,* 49 CFR §§ 171.15 and .16. The additional requirements imposed by the Nevada regulations are both redundant (*see e.g.,* Nev.Admin.Code § 705.330(f)) and burdensome (*see e.g.,* Nev.Admin.Code § 705.330(b) (requiring "[a] report identifying each switch, siding, spur or branch of track at the site and its purpose)). Further, they indicate the state's attempt to regulate areas clearly addressed in the federal regulations. For example, despite the HMR's detailed requirements with respect to the loading and unloading of hazardous materials, the Nevada regulations require applicants to submit "[a]n outline of the procedure to be used in the loading, unloading, transfer or storage of the hazardous material." Nev.Admin.Code § 705.330(g). The PSC's approval of an application is apparently contingent upon its satisfaction with the procedures used.

Similarly, although 49 CFR §§ 174.16(a), (b) and 174.55(e) require that rail carriers store hazardous materials in a secure facili-

ty and §§ 173.3 and 174.8 authorize the DOT to inspect storage sites for compliance, Nev.Admin.Code § 705.330(h) requires applicants to submit an outline of its security measures. Again, the PSC's approval of an application is apparently contingent upon its satisfaction with the precautions taken. Under the open-ended Nevada regulations, the PSC could conceivably refuse an application based on its dissatisfaction with loading procedures or security measures adopted pursuant to the federal regulations and approved by federal inspectors. Conversely, the PSC could conceivably approve a permit application despite the fact that loading procedures or security measures violate federal regulations.

Finally, the fact that Nev.Admin.Code § 705.370 authorizes the PSC to require an applicant to submit any additional information that it deems necessary may also lead to great expense and delay. In fact, the Nevada regulations confer broad discretion upon the PSC. Rather than establishing measurable standards, the regulations give the PSC the authority to approve or disapprove the procedures followed by a rail carrier. At least one federal court has held similarly vague regulations invalid under the Supremacy Clause, the Commerce Clause and the due process clause of the fourteenth amendment. *See Union Pacific Railroad Co. v. City of Las Vegas,* CV–S–85–932 HDM (D.Nev., May 12, 1989).

For these reasons, the DOT determined that the Nevada regulations, specifically sections 705.310, .320, .330, .340, .350, .360, and .370, constitute an obstacle to the execution of the HMTA and HMR and are, therefore, inconsistent under the "obstacle test," the second leg of inconsistency analysis under the HMTA. However, the district court based its holding upon its conclusion that "[c]ompliance with the Nevada regulations ... does not in any manner prevent the railroad from complying with the federal regulations." Thus, the district court determined that the Nevada regulations passed the "dual compliance test," the first leg of the inconsistency analysis described above. Although the DOT based its inconsistency ruling almost

entirely upon its determination that the Nevada regulations failed the obstacle test, the district court not only failed to discuss the DOT's determination with respect to the obstacle test, it completely failed to acknowledge the existence of this second leg of preemption analysis.

Because the DOT authored the HMR, its determination of what constitutes an obstacle to the accomplishment or execution of those regulations is deserving of substantial deference. *See Udall,* 380 U.S. at 16, 85 S.Ct. at 801. Contrary to the district court's holding, the DOT's inconsistency ruling is neither "poorly reasoned" nor "based primarily on speculation." The district court erred in failing to accord sufficient deference to this ruling. Consequently, we reverse the district court's order and remand for proceedings consistent with this disposition.

## IV

Because we hold that the Nevada regulations are preempted by HMTA and HMR, it is unnecessary for us to address the other arguments made by the appellant.

REVERSED and REMANDED.