**NORTHERN STATES POWER COMPANY, Plaintiff,**

**v.**

**The PRAIRIE ISLAND MDEWAKANTON SIOUX INDIAN COMMUNITY, its Tribal Council, Dale R. Childs, Richard Buck, Johnny Johnson, Vine H. Wells, and Jim White, all in their Official Capacity, the Bureau of Indian Affairs, Minneapolis Area Office, the Interior Board of Indian Appeals, and the United States of America, Defendants.**

Civ. No. 3–91–783.

United States District Court,
D. Minnesota,
Third Division.

Dec. 23, 1991.

Michael J. Ahern and Michael J. Bradley, Moss & Barnett, Timothy R. Thornton and Samuel L. Hanson, Briggs and Morgan,

Minneapolis, Minn., for plaintiff Northern States Power Co.

Kurt V. BlueDog and William J. Hardacker, Bluedog Law Office, Bloomington, Minn., for defendants Prairie Island Mdewakanton Sioux Indian Community and its Tribal Council.

Lonnie F. Bryan, Asst. U.S. Atty., D. Minn., for defendants Bureau of Indian Affairs, Minneapolis Office, Interior Bd. of Indian Appeals, and U.S.A.

## MEMORANDUM OPINION AND ORDER

DEVITT, District Judge.

Plaintiff Northern States Power Company (NSP), operator of a nuclear power plant on Prairie Island in the city of Red Wing, Minnesota, moves the court in this declaratory judgment action to preliminarily enjoin defendants from enforcing a recently enacted tribal ordinance entitled "Nuclear Radiation Control Ordinance" (the ordinance). If enforced, the ordinance would regulate directly NSP's efforts to transport various radioactive materials necessary to the power plant's operation to and from the plant as well as NSP's efforts to manage radioactive waste. For the reasons set forth below, the court will grant NSP's motion.

## BACKGROUND

### A.

The facts underlying this action are largely undisputed. NSP is a corporation doing business in Minnesota as an electric and natural gas utility. The Prairie Island facility is located adjacent to land (the reservation) occupied by the Prairie Island Mdewakanton Sioux Indian Community (the Community). The reservation land is owned by the United States and held in trust for the Community. There are two

---

methods of land access to the Prairie Island plant: via rail and via Goodhue County Road 18. Both the railway and the road cross the reservation.

The Community's Tribal Council[1] adopted the ordinance on July 16, 1991. The stated purpose of the ordinance is "to protect the health and safety, economic interests, spiritual needs and aesthetic desires of tribal members and their descendants ..." Ordinance at 1. The ordinance concerns essentially two aspects of NSP's Prairie Island operation. First, the ordinance regulates NSP's efforts to transport radioactive materials necessary to the facility's operation to and from the facility. Second, the ordinance regulates NSP's proposed construction of a waste management facility. The ordinance regulates within a geographic area identified as the "regulated zone." The "regulated zone" encompasses the reservation and

> any lands outside the reservation boundaries to which the Prairie Island Indian Community maintains possessory or usage rights arising out of congressionally ratified treaties. Any air, surface water or groundwater likely to be located on, beneath or above such lands is also within the regulated zone.

*Id.* at 4. The Prairie Island facility itself lies outside the regulated zone.

The ordinance forbids the transportation of any radioactive substances across the regulated zone without a transportation license. *Id.* at 5–6. The term "radioactive substances" is defined broadly in the ordinance to mean "all things releasing energy because of radioactive decay unless specifically excepted by this section." *Id.* at 3. Due to the breadth of this definition, certain items shipped to and from the plant are subject to the ordinance though they release no more radiation than that normally present in the environment.[2] To obtain a

---

1. The Tribal Council is comprised of five members of the Community and serves as the Community's principal legislative body.

2. That the definition of radioactive substances is exceptionally broad is also indicated by the types of exceptions listed in the ordinance. These include

(i) Biological wastes released by persons and living creatures undergoing radiational therapy.

(ii) Ionization-type smoke alarms, watch dials, emergency signs and instrument panels lit by radium, tritium or other high-energy sub-

transportation license, NSP must apply to the Tribal Council at least 180 days in advance of each shipment. *Id.* at 6. Each application must be accompanied by a fee of $1,000. *Id.* After a hearing and consideration of the application materials, the Tribal Council decides whether to issue a license. *Id.* Evidently, the Tribal Council bases its decision upon a number of criteria (though these are not enumerated specifically in the ordinance), including the perceived risk involved in the transport. *Id.* at 7–8. The Tribal Council may deny a license application "for failure to comply with the requirements of the ordinance, or other good cause." *Id.* at 6. Good cause is not defined in the ordinance.

As noted earlier, the ordinance also regulates NSP's proposed construction of a waste management facility. Prior to constructing such a facility within the regulated zone, the ordinance requires NSP to submit to the Tribal Council an

> environmental and health impact statement and radiation exposure analysis found acceptable by the Tribal Council, that show the proposed project will not lead to violations of tribal, municipal, county, state, regional or federal nuclear energy regulations ...

*Id.* at 9. The ordinance also requires NSP to reimburse the Tribal Council for expenses incurred in analyzing the proposed facility and pay a "set share of health monitoring costs for tribal members made necessary by nuclear radiation exposure." *Id.* at 10.

The ordinance authorizes the Tribal Council to enter an "agreement[ ] of cooperation" with NSP to more efficiently and comprehensively regulate NSP's frequent transport of radioactive materials through

the regulated zone. *Id.* at 10–11. The ordinance also authorizes the assessment of civil penalties for unintentional and willful violations. *Id.* at 11. In the event NSP willfully violates any provision of the ordinance it is subject to a one million dollar fine. *Id.*

### B.

Because the ordinance directly affects non-members of the reservation, it is subject to review by the Department of Interior.[3] The first step in the review process requires the Area Director of the Bureau of Indian Affairs, Minneapolis Office (the Area Director) to determine whether the ordinance complies with the Prairie Island Community's constitution and bylaws. By letter dated August 13, 1991, the Area Director approved the ordinance on that basis.

On or about September 27, 1991, NSP appealed the Area Director's decision to the Interior Board of Indian Appeals (IBIA). Pursuant to 43 C.F.R. § 4.21(a), the filing of NSP's notice of appeal suspended the effect of the decision of the Area Director approving the ordinance pending decision on appeal.[4] Nonetheless, on November 19, 1991, the Tribal Council formally "resolved to fully enforce [the] ordinance." Notice of Resolution 91–110, November 20, 1991. Subsequently, on November 27, NSP requested the IBIA to order the Tribal Council to "cease and desist enforcement" of the ordinance.

On December 3, 1991, the IBIA issued an order in response to NSP's request. The IBIA concluded it lacked authority "to enjoin an Indian tribe from enforcing a tribal ordinance." IBIA Order at 1. The IBIA

---

stance, and other devices commonly used in residences.

(iii) Natural materials, if not previously processed for use in nuclear reactors, or made radioactive by human acts or accidents.
Ordinance at 4.

**3.** The Tribal Council has acknowledged the Department of Interior's obligation to review the ordinance. *See* Ordinance at 13–14.

**4.** 43 C.F.R. § 4.21(a) provides:

(a) *Effect of decision pending appeal.* Except as otherwise provided by law or other pertinent regulation, a decision will not be effective during the time in which a person adversely affected may file a notice of appeal, and the timely filing of a notice of appeal will suspend the effect of the decision appealed from pending the decision on appeal. However, when the public interest requires, the Director or an Appeals Board may provide that a decision or any part of it shall be in full force and effect immediately.

further concluded, after reviewing the Community's constitution, that upon approval of the Area Director the ordinance became effective and enforceable by the Community. *Id.* The IBIA recognized its decision placed NSP's "appeal in an unusual procedural posture. That is, while the ordinance is effective, the Area Director's decision approving it is not. 43 CFR 4.21(a), 4.314(a)." *Id.* at 2. To short circuit otherwise requisite and time-consuming administrative appeals, Department of Interior regulations permit the IBIA to provide that an IBIA decision (which is otherwise appealable within the agency) "be in full force and effect immediately" when the public interest requires. 43 C.F.R. §§ 4.21(a), (b). The IBIA, recognizing the unusual procedural position in which its decision placed NSP's appeal, rendered its December 3 decision effective "[t]o remove any doubt ... as to whether [NSP] is entitled to proceed to court." IBIA Order at 2.

NSP commenced this declaratory judgment action by filing a verified complaint on December 13, 1991. On December 17, the court held a hearing upon NSP's motion for a temporary restraining order. The court granted NSP's motion and invited further briefing from all parties in connection with NSP's motion for a preliminary injunction. On Monday, December 23, the court entertained oral argument upon plaintiff's motion for preliminary relief.

## DISCUSSION

### A.

NSP argues it is entitled to a preliminary injunction. NSP avers that continued enforcement of the ordinance prevents the shipment and receipt of numerous materials necessary to maintain a safe operation at the Prairie Island facility. NSP asserts that its shipments to and from the facility fall well within the safety guidelines established by the federal government and have never posed a real threat or risk to the Community. According to NSP, enforcement of the ordinance actually increases the risk to public safety. Finally, NSP identifies numerous legal theories to support its position that the ordinance regulates in areas beyond the scope of the Tribal Council's authority. Paramount among NSP's legal theories is that the ordinance encroaches upon a field preempted by federal law, namely the Hazardous Materials Transportation Act (HMTA), 49 U.S.C.App. §§ 1801–1819, and the Atomic Energy Act (AEA), 42 U.S.C. §§ 2011–2296.

Defendants maintain NSP is not entitled to a preliminary injunction. The Community and Tribal Council have filed a motion to dismiss the case and assert principally the affirmative defense of sovereign immunity. All defendants argue that NSP has failed to exhaust its administrative remedies. Defendants further maintain that NSP will suffer no immediate irreparable harm in the absence of an injunction. This is because, according to defendants, the Tribal Council is willing to enter an "agreement of cooperation" with NSP to accommodate NSP's immediate and essential needs. The Community and Tribal Council contend they stand to suffer harm if the court grants NSP's motion because issuance of a preliminary injunction would not promote tribal self-governance or self-determination; the federal defendants take no position on the issue. All defendants challenge NSP's ability to demonstrate that a preliminary injunction would favor the public interest, though no defendant analyzes the issue in detail. Finally, while the Community and Tribal Council oppose NSP's position on the merits, the federal defendants expressly decline to adopt a position with respect to this factor.

### B.

As a threshold matter, the court finds NSP has exhausted its administrative remedies. As noted earlier, in its December 3 order the IBIA rendered the Area Director's decision effective pursuant to 43 C.F.R. § 4.21(a). Once rendered effective, the IBIA's December 3 order became "final so as to be agency action subject to judicial review." 43 C.F.R. § 4.21(b).

In a separate vein, examination of the exhibits submitted by NSP reveals that on appeal to the IBIA, NSP requested a stay of further proceedings before the IBIA un-

til the Secretary of the Department of Transportation had an opportunity to determine whether the HMTA preempted the ordinance. Exhibit E to Verified Complaint, NSP's Notice of Appeal to IBIA at 3. The HMTA expressly authorizes such a review by providing, in pertinent part:

Any person ... directly affected by any requirement of ... [an] Indian tribe, may apply to the Secretary ... for a determination of whether that requirement is preempted by section 1804(a)(4) or 1804(b) of this Appendix or subsection (a) of this section. The Secretary shall publish notice of the application in the Federal Register. Once the Secretary has published such notice, no applicant for such determination by the Secretary may seek relief with respect to the same or substantially the same issue in any court until the Secretary has taken final action on the application or until 180 days after the filing of the application, whichever occurs first.

49 U.S.C.App. § 1811(c)(1). The HMTA expressly permits judicial review in lieu of administrative review. 49 U.S.C.App. § 1811(c)(2). The court is unaware as to whether NSP ultimately filed an application with the Secretary pursuant to this statute. However, the court has searched the Federal Register and has failed to find any published notice of NSP's application. The court therefore finds NSP is entitled to bring its cause before this court.

### C.

The court analyzes NSP's motion for a preliminary injunction in accordance with the now-familiar criteria first set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc). They are: (1) the threat of irreparable harm to the movant, (2) the state of balance between this harm and the injury that granting the injunction will inflict upon other parties to the case, (3) the public interest, and (4) the likelihood that movant will succeed on the merits. *Dakota Industries, Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir.1991); *Dataphase*, 640 F.2d at 114.

■ The court first analyzes the threat of irreparable harm posed by enforcement of the ordinance. Under the terms of the ordinance, NSP must apply 180 days in advance of each shipment for a transportation license. Edward L. Watzl, General Manager of the Prairie Island facility, testifies by affidavit that NSP is presently unable to ship composite samples of radioactive water for outside testing. Watzl Affidavit at ¶ 7. The purpose of testing the samples is to determine whether the radioactive water discharged into the Mississippi River complies with applicable federal standards. *Id.* at ¶ 10. Shipment of these samples is now over two weeks behind schedule. *Id.* at ¶ 7. According to Watzl, "[t]here are serious public health and regulatory consequences that can result from [the facility's] failure to timely send the quarterly water samples and receive the sample results." *Id.* at ¶ 9. For example, the facility would be less able to monitor the radioactive content of the waste water. *Id.* at ¶ 10, 11. Further, NSP's failure to timely report the results of outside testing could cause it to incur fines and a decrease in the Prairie Island facility's Systematic Assessment of Licensee Performance Rating. *Id.* at 12, 13. In addition, numerous future shipments of materials necessary to enable NSP to maintain the facility stand to be delayed. *Id.* at ¶¶ 19, 25–29, 33–34.

Defendants do not contest that numerous shipments of radioactive materials are or will be delayed if the ordinance is enforced in accordance with its terms. Defendants assert, however, that the Tribal Council is willing to enter into cooperative agreements and not enforce the ordinance in strict adherence to its terms. The court cannot consider the possibility that this action will settle in determining whether NSP stands to suffer irreparable harm. So long as the Tribal Council has authority to enforce the ordinance "to the letter," the court must assume the Tribal Council will do so and analyze the effect of the ordinance as written. In view of the previously mentioned delays in the transportation of materials which have resulted or which are likely to result from enforcement of the ordinance, the court finds enforcement of

the ordinance poses a very real and substantial threat that NSP will suffer irreparable harm.

■ The court next must address the potential injury other parties to the case will suffer in the event the court issues a preliminary injunction and balance this harm against the irreparable harm likely to be suffered by NSP. To review, the federal defendants take no position with respect to this factor; on the other hand, the Community and Tribal Council assert they will suffer injury because issuance of an injunction would not promote tribal self-governance or self-determination. The court accepts that the placement of unlawful restrictions upon the sovereignty and authority of the Community and Tribal Council could result in cognizable injury. However, in a succeeding section of this memorandum opinion the court concludes that the Tribal Council likely is without authority to regulate in the manner and to the extent sought through the ordinance. The Community and Tribal Council may not claim that issuance of a preliminary injunction would impinge upon tribal self-governance because the Tribal Council likely did not possess authority to enact the ordinance. Defendants do not claim that shipments of radioactive materials across the reservation pose a meaningful risk of harm to the Community. The court concludes the irreparable harm to be suffered by NSP in the absence of an injunction far outweighs the harm the Community alleges it will sustain if an injunction is issued.

■ The court next attempts to analyze where the public interest lies. The federal defendants identify three public interests: the interest in uniform regulation of nuclear power producing facilities, the interest in a constant and cost-efficient power supply, and the interest in protecting the sovereignty and autonomy of Indian tribes. NSP identifies the public interest in maintaining the safe operation of the Prairie Island facility. The court finds these interests are best served by issuance of a preliminary injunction. The Tribal Council intended the ordinance to safeguard the health and safety of the Community. However, by delaying the shipment of materials necessary to the safe operation of the Prairie Island plant, the ordinance actually inhibits the safe operation of the facility thereby increasing the safety risk. Further, NSP avers (without challenge) that continued enforcement of the ordinance threatens to delay necessary maintenance procedures and increase substantially the cost of producing power.

■ Finally, the court addresses the likelihood that NSP will succeed ultimately on the merits. The court rejects the Community and Tribal Council's contention that sovereign immunity bars this action. These defendants concede sovereign immunity does not prohibit actions against tribal officers who are alleged to have acted beyond the scope of authority the sovereign is capable of bestowing. *See Tenneco Oil Co. v. Sac and Fox Tribe of Indians of Oklahoma*, 725 F.2d 572, 574–75 (10th Cir. 1984) (when complaint alleges named officer defendants have acted outside authority the sovereign is capable of bestowing, an exception to the doctrine of sovereign immunity is invoked). Here, NSP alleges the Tribal Council officers acted beyond their scope of authority. NSP has, therefore, invoked an exception to the sovereign immunity otherwise applicable to the Community and Tribal Council.

In analyzing the likelihood that NSP will succeed on the merits, the court focuses upon NSP's claim that the HMTA and the AEA preempt the ordinance. In doing so, the court is cognizant that preemption analysis generally requires a detailed examination of both the preemptive federal statute and the allegedly preempted legislation. At this stage, however, the court does not seek to reach a final decision as to whether the HMTA and the AEA preempt the ordinance, but only seeks to ascertain the likelihood that either statute preempts the ordinance. The court will, therefore, analyze the issue with relative brevity.

Radioactive materials are expressly included within the list of hazardous materials subject to the regulations promulgated under the HMTA. *See* 49 C.F.R. §§ 173.401–173.478. The HMTA expressly

preempts any requirement of an Indian tribe which is not substantively identical to any provision of or regulation promulgated under the HMTA and concerns any of the following subjects:

(i) The designation, description, and classification of hazardous materials.

\* \* \* \* \* \*

(iii) The preparation, execution, and use of shipping documents pertaining to hazardous materials and requirements respecting the number, content, and placement of such documents.

49 U.S.C.App. § 1804(a)(4)(A), (B). In addition, the HMTA expressly preempts any requirement of an Indian tribe if

(1) compliance with both the ... Indian tribe requirement and any requirement of [the HMTA] or of a regulation issued under [the HMTA] is not possible, [or] (2) the ... Indian tribe requirement as applied or enforced creates an obstacle to the accomplishment and execution of [the HMTA] or the regulations issued under [the HMTA] ...

49 U.S.C.App. § 1811(a).

The ordinance contains at least one requirement which appears almost certain to be preempted by the HMTA. The ordinance's definition of "radioactive materials" appears broader than the definition set forth under the HMTA. 49 U.S.C.App. § 1804(a)(4)(B)(i). Also, numerous provisions within the ordinance appear to subject NSP to a substantially greater regulatory burden than is imposed by the HMTA (e.g. 180–day permit application requirement for each shipment; $1,000 application fee). *See Southern Pacific Transportation Co. v. Public Service Commission of Nevada*, 909 F.2d 352, 356, 358 (9th Cir. 1990) (state regulations which address matters already covered by HMTA regulations, impose substantial burdens on applicants, and create risks of confusion, conflict and delay preempted by HMTA). The court concludes the HMTA likely preempts significant portions (if not all) of the ordinance.

The court likewise concludes the AEA likely preempts significant segments of the ordinance. Our Eighth Circuit Court of Appeals some twenty years ago held, anent NSP's nuclear power plant near Monticello, Minnesota, "that the federal government has exclusive authority under the doctrine of pre-emption to regulate the construction and operation of nuclear power plants." *Northern States Power Co. v. State of Minnesota*, 447 F.2d 1143, 1154 (8th Cir. 1971), *judgment aff'd*, 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972). The Supreme Court has, since 1972, recognized that the AEA grants certain limited powers to the states. *Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 211–12, n. 24, 103 S.Ct. 1713, 1726, n. 24, 75 L.Ed.2d 752 (1983). However, these limited powers do not appear to encompass or authorize the Tribal Council's adoption of the ordinance.

### ORDER

On the files and records, IT IS ORDERED that:

1. Defendants and their employees, agents, and any and all others acting in concert or participation with them are enjoined and restrained until further order of the court from:

(a) seeking to enforce in any manner the Prairie Island Indian Community Nuclear Radiation Control Ordinance;

(b) interfering in any way with the safe, free, and unimpeded use of any road, including Goodhue County Road 18, through the Prairie Island Mdewakanton Sioux Reservation or Community, to and from the Prairie Island Nuclear Plant, any NSP property located at Prairie Island, the spent fuel storage facility or the site where the spent fuel storage facility is or will be located;

(c) interfering in any way with the safe, free, and unimpeded use of the railroad through the Prairie Island Mdewakanton Sioux Reservation, to and from the Prairie Island Nuclear Plant, any NSP property located at Prairie Island, the spent fuel storage facility or the site where the spent fuel storage facility is or will be located.

2. The order of the Interior Board of Indian Appeals affirming the Nuclear Radiation Control Ordinance is stayed until further order of the court.

3. Defendants' motion to dismiss is DENIED.

4. Plaintiff shall forthwith furnish security by way of bond in the amount of $25,000 to ensure payment of such costs and damages as defendants wrongfully may suffer by the restraints imposed.