29 F.3d 495
 39 ERC 1282, 24 Envtl. L. Rep. 21,273
 The CHLORINE INSTITUTE, INC.; DX Systems Company; General
Chemicals Corp.; Jones Chemicals, Inc.,
Plaintiffs-Appellees,
v.
CALIFORNIA HIGHWAY PATROL, an agency of the State of
California; State of California, Defendants-Appellants.
 No. 92-16858.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1994.
Decided July 11, 1994.
 
 Henry G. Ullerich, Interim Asst. Atty. Gen., Los Angeles, CA, for defendants-appellants.
 Paul M. Donovan, LaRoe, Winn, Moerman & Donovan, Washington, DC, for plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before: HUG, FARRIS, and O'SCANNLAIN, Circuit Judges.
 Opinion by Judge HUG; concurrence by Judge O'SCANNLAIN.
 HUG, Circuit Judge:
 
 BACKGROUND
 
 1
 In 1975, Congress enacted the Hazardous Materials Transportation Act, 49 U.S.C. app. Sec. 1801, et seq. ("HMTA") "to replace a patchwork of state and federal laws and regulations" concerning the transportation of hazardous materials, "with a scheme of uniform, national regulations." Southern Pac. Transp. v. Public Serv. Comm'n of Nev., 909 F.2d 352, 353 (9th Cir.1990). Pursuant to authority delegated by the HMTA, the United States Department of Transportation ("DOT") has promulgated the Hazardous Materials Regulations ("HMR"), which classify hazardous materials and prescribe certain requirements for shippers and carriers of such materials. 49 C.F.R. Secs. 171-179.
 
 
 2
 In 1990, Congress substantially amended the HMTA by enacting the Hazardous Materials Transportation Uniform Safety Act, 49 U.S.C.App. Secs. 1801-1819 ("HMTUSA"), which, among other things, rewrote the standards for determining when federal law preempts state regulations pertaining to hazardous materials transportation. Id. at Sec. 1811(a). The preemption provision relevant to this appeal is found at section 1811(a)(2), which provides for the preemption of any state requirement that "as applied or enforced creates an obstacle to the accomplishment and execution of [the HMTUSA] or [the HMR]." 49 U.S.C. app. Sec. 1811(a)(2) (1993).
 
 
 3
 The Department of the California Highway Patrol ("CHP") has adopted regulations regarding the transportation of certain hazardous materials having particular toxicity thresholds. These regulations require that shipments of such materials on California highways be accompanied by escort vehicles, and prescribe various requirements regarding those vehicles. 13 C.C.R. Secs. 1133.3(a), 1155.3(a), 1155.8. The CHP regulations go beyond the regulations imposed by the HMR, which do not require escort vehicles for the transportation of nonradioactive materials.
 
 
 4
 The plaintiffs, The Chlorine Institute, Inc., DX Systems Company, General Chemicals Corporation and Jones Chemicals, Inc., (collectively "CI") represent manufacturers and shippers of chlorine and oleum. Both chlorine and oleum fall within the category of materials to which the above CHP regulations apply. On March 13, 1992, CI filed suit against CHP, seeking declaratory judgment and injunctive relief against the California regulations. CI claimed that the regulations were preempted by the HMTUSA because they created an obstacle to the accomplishment of the goals of the federal act. On September 16, 1992, the district court granted summary judgment in favor of CI. CHP timely appealed.
 
 DISCUSSION
 
 5
 We review a grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact and whether the district court properly applied the relevant substantive law. Federal Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992), cert. granted, --- U.S. ----, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993) (No. 93-489).
 
 
 6
 The HMTUSA provides that a state law or regulation is preempted if, "as applied or enforced [it] creates an obstacle to the accomplishment and execution" of the HMTUSA or the HMR. 49 U.S.C. app. Sec. 1811(a)(2) (1993). In applying the obstacle test to determine preemption, the Supreme Court has examined whether the state law in question poses an " 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress' ". Hillsborough County, Fla. v. Automated Medical Lab., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).
 
 
 7
 This court previously has found that a major purpose of the HMTA was the development of "a uniform, national scheme of regulation" regarding the transportation of hazardous materials. Southern Pacific, 909 F.2d at 358. In amending the HMTA in 1990 through the enactment of the HMTUSA, Congress reiterated this interest in establishing uniform standards:
 
 
 8
 (3) many States and localities have enacted laws and regulations which vary from Federal laws and regulations pertaining to the transportation of hazardous materials, thereby creating the potential for unreasonable hazards in other jurisdictions and confounding shippers and carriers which attempt to comply with multiple and conflicting registration, permitting, routing, notification, and other regulatory requirements,
 
 
 9
 (4) because of the potential risks to life, property, and the environment posed by unintentional releases of hazardous materials, consistency in laws and regulations governing the transportation of hazardous materials is necessary and desirable,
 
 
 10
 (5) in order to achieve greater uniformity and to promote the public health, welfare, and safety at all levels, Federal standards for regulating the transportation of hazardous materials in intrastate, interstate, and foreign commerce are necessary and desirable,
 
 
 11
 ....
 
 
 12
 49 U.S.C. app. Sec. 1801 note (1993) (Congressional Findings: 1990 Amendment). See also Colorado Pub. Utilities Comm'n v. Harmon, 951 F.2d 1571, 1581 (10th Cir.1991) (finding congressional purpose in enacting HMTUSA was the achievement of "uniformity in the regulation of hazardous materials transportation").
 
 
 13
 We therefore must determine if the CHP regulations pose an obstacle to the accomplishment of the HMTUSA's goal of uniform national regulation. If they do create such an obstacle, they are preempted under the Act.
 
 
 14
 This court has held that state regulations pertaining to an area already regulated under the HMR pose an obstacle to the goal of uniform national standards for the transportation of hazardous materials. Southern Pacific, 909 F.2d at 358.[1] In Southern Pacific, we considered a challenge to Nevada regulations requiring carriers of hazardous materials to obtain a state permit prior to loading, unloading, shipping and storage of such materials. We found that, because the DOT had already imposed numerous requirements regarding such loading, unloading, shipping and storage, the Nevada regulations "create[d] a separate regulatory regime for these activities, fostering confusion and frustrating Congress' goal of developing a uniform, national scheme of regulation." Id. As such, we found the Nevada regulations preempted under the HMTA. See also Colorado Public Utilities, 951 F.2d at 1581-83 (state permit requirements for shipment of nuclear materials preempted under the HMTUSA's obstacle test because they "clearly exceed the information and documentation requirements set forth in [the HMR]"); Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community, 991 F.2d 458, 461-62 (8th Cir.1993) (tribal licensing and pre-notification requirements for transportation of nuclear materials held preempted because they "greatly exceed the federal provisions and create the exact inconsistency the [HMTUSA] intends to prevent").
 
 
 15
 The HMR impose extensive requirements for the shipment of chemicals such as chlorine and oleum. 49 C.F.R. Sec. 171-79 (1992). These regulations include, among other things, requirements for marking, labelling, vehicle placarding, packaging and vehicle equipment. Despite the DOT's extensive regulation of this field, the CHP has imposed a requirement that shipments of chemicals such as chlorine and oleum be accompanied by escort vehicles. 13 C.C.R. Sec. 1155.8. In addition, the CHP regulations require that those vehicles be equipped with special communications equipment, 13 C.C.R. Sec. 1155.3(a)(1), a self-contained breathing apparatus, 13 C.C.R. Sec. 1133.3(a)(9), and, in certain situations, a sleeper berth and an additional driver, 13 C.C.R. Sec. 1155.3(a)(10).
 
 
 16
 The CHP regulations significantly exceed the federal requirements for the shipment of chemicals such as chlorine and oleum. As such, they "create a separate regulatory regime for these activities, fostering confusion and frustrating Congress' goal of developing a uniform, national scheme of regulation." Southern Pacific, 909 F.2d at 358. Because the CHP regulations impose substantial requirements additional to those imposed by DOT, they are preempted by the HMTUSA and the HMR.
 
 
 17
 We note that our decision today does not leave California without an avenue to pursue its perceived need for additional regulation. Congress has specifically provided that states may apply to DOT for a waiver of federal preemption. 49 U.S.C. app. Sec. 1811(d) (1993). DOT may grant a waiver if the proposed state regulation provides equal or greater safety than the federal provisions, and does not unnecessarily burden commerce. Id. As the district court noted, the DOT is far better equipped to make a determination of the impact of proposed state regulations than are the federal courts.
 
 CONCLUSION
 
 18
 The CHP has promulgated regulations that impose substantial shipping requirements additional to those imposed under federal regulations, thus creating an obstacle to the accomplishment of Congress' goal of uniform, national regulation of hazardous materials transportation. The California regulations therefore are preempted under the HMTUSA.
 
 
 19
 The order of the district court is AFFIRMED.
 
 
 20
 O'SCANNLAIN, Circuit Judge, specially concurring:
 
 
 21
 The result of this case is an unfortunate defeat of the legitimate interests of the people of California who wish to protect themselves from the risks of hazardous materials. Nevertheless, with reluctance and based solely on the binding precedent of our court's decision in Southern Pacific Transportation Co. v. Public Service Commission of Nevada, 909 F.2d 352 (9th Cir.1990), I must concur in the court's opinion.
 
 
 22
 Although I believe that Southern Pacific dictates that the court affirm the district court's ruling that California's regulation is preempted by the Hazardous Materials Transportation Uniform Safety Amendments, I regret the result and the implications it carries for federalism. Our Constitution is based on a healthy respect for the sovereignty of the state. As Chief Justice John Marshall observed: "The genius and character of the [federal] government seem to be, that its action is to be applied to all the external concerns of the nation, and to those internal concerns which affect the states generally; but not to those which are completely within a particular state, which do not affect other states, and with which it is not necessary to interfere, for the purpose of executing some of the general powers of the government." Gibbons v. Ogden, 22 U.S. 1, 86, 9 Wheat. 1, 195, 6 L.Ed. 23 (1824). State sovereignty is only to be infringed when necessary. Goldstein v. California, 412 U.S. 546, 554, 93 S.Ct. 2303, 2308-09, 37 L.Ed.2d 163 (1973). "Necessary" should entail a higher hurdle than a mere stated desire for uniformity because the diminution of state rights does not come without a cost.
 
 
 23
 Justice O'Connor has repeatedly articulated the history and purposes behind our federalist structure. Federalism "assures a decentralized government that will be more sensitive to the diverse needs of a heterogenous society; it increases opportunity for citizen involvement in democratic processes; it allows for more innovation and experimentation in government; and it makes government more responsive by putting the States in competition for a mobile citizenry." Gregory v. Ashcroft, 501 U.S. 452, 458, 111 S.Ct. 2395, 2399, 115 L.Ed.2d 410 (1991).
 
 
 24
 The effect of the erosion of state authority is particularly ironic in the area of environmental regulation. Within our federal system, states are intended to be laboratories of experimentation in which various policies are debated, implemented, and refined. The modern environmental movement started in the states. The federal government has followed the lead of the states, evaluating different state programs and borrowing the best ideas in order to form a comprehensive federal law. It is incongruous that in adopting the ideas that states have already developed, federal law should prevent further innovation by prohibiting states from expanding their environmental programs, be they regulation of hazardous materials transportation or other initiatives. By preempting state authority in this case, we effectively eliminate the ability of states to develop new and better ways of protecting the public health, safety, and environment. And we prevent innovative state programs from percolating up to the federal level.
 
 
 25
 At oral argument counsel for the Chlorine Institute made the curious assertion that the Hazardous Materials Transportation Uniform Safety Act did not constitute 100% preemption of the regulation of hazardous materials by the receiving state. Yet he argued, persuasively, that the issue was whether the state regulation would violate the principle of "uniformity." But for Southern Pacific, I would remand this case for a factfinding determination by the trial court in California as to whether the state regulations were indeed an obstacle to national uniformity. On a clean slate, they may be or they may be not. In any event, it is bleak consolation to be offered recourse to a federally-constituted board sitting in Washington, D.C. for responsive resolution of California's legitimate safety concerns in this case.
 
 
 
 [1]
 The challenge to the regulations in Southern Pacific came before the 1990 enactment of HMTUSA. While the HMTA did not include the specific preemption provision at issue here, the HMR at that time did provide for preemption of state laws that pose "an obstacle to the accomplishment and execution of the HMTA or DOT regulation." Southern Pacific, 909 F.2d at 355 (citing 49 C.F.R. Sec. 107.209). Therefore, the court considered the challenge in light of an "obstacle" test identical to the one now incorporated into the HMTUSA