_____

No. 95-1526
_____

Reservation Telephone                  *
Cooperative; Consolidated              *
Telephone Cooperative;                 *
West River Telecommunications          *
Cooperative,                           *
                                       *
        Plaintiffs-Appellants,         *
                                       *
Mountrail-Williams Electric            *
Cooperative,                           *
                                       *
        Plaintiff,                     *
                                       *
Jay Sandstrom; A. Neal                 *
Hendrickson,                           *
                                       *  Appeal from the United States
        Plaintiffs-Intervenors,        *  District Court for the
                                       *  District of North Dakota.
        v.                             *
                                       *
Three Affiliated Tribes of the         *
Fort Berthold Reservation;             *
Three Affiliated Tribes Tribal         *
Business Council; Three                *
Affiliated Tribes Tax                  *
Commission; Wilbur D.                  *
Wilkinson, Chairman, Tribal            *
Business Council; Joseph J.            *
Walker, Director, Tax                  *
Commission,                            *
                                       *
        Defendants-Appellees.          *
                                       *
--------------                         *
                                       *
State of North Dakota;                 *
United States of America,              *
                                       *
        Amicus Curiae.                 *
                             _____

            Submitted:  November 16, 1995

               Filed:  January 30, 1996
                             _____

Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
                             _____

BEAM, Circuit Judge.

Three telephone cooperatives (the Cooperatives) challenge the authority of the Three Affiliated Tribes of the Fort Berthold Reservation (the Tribes) to impose a possessory interest tax on their telephone lines and rights-of-way located within the Reservation. The Cooperatives contend that federal law governing the construction and operation of telephone lines on Indian reservations preempts the Tribes' right to tax the Cooperatives' telephone interests. The district court[1] dismissed the action without prejudice, holding that the Cooperatives must first exhaust their tribal remedies before challenging the tax in federal court. We affirm.

## I.    BACKGROUND

The Cooperatives, Reservation Telephone Cooperative, Consolidated Telephone Cooperative, and West River Telecommunications Cooperative, are organized under the laws of North Dakota. Each Cooperative provides telephone service to the Fort Berthold Reservation (the Reservation) through telephone cables crossing Reservation lands by virtue of rights-of-way granted by the Secretary of the Interior. Congress authorized the Secretary of the Interior to grant these rights-of-way in Section 3 of its Act of March 3, 1901, 31 Stat. 1083 (codified at 25 U.S.C. § 319) (1901 Act). The 1901 Act further authorizes the Secretary of the Interior to tax telephone lines for the benefit of Indian tribes, but leaves intact the authority of state, territorial, or municipal authorities to assess a tax on telephone lines laid pursuant to federal rights-of-way.[2]

---

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

[2]Section 3 of the 1901 Act provides:

-2-

In 1990, the Tribes enacted a tax on interests in real and personal property located within the exterior boundaries of the Reservation and used for business or profit. Three Affiliated Tribes of the Fort Berthold Reservation Tribal Tax Code (hereinafter Tribal Tax Code), Ch. 7. This possessory interest tax

The Secretary of the Interior is authorized and empowered to grant a right of way, in the nature of an easement, for the construction, operation, and maintenance of telephone and telegraph lines and offices for general telephone and telegraph business through any Indian reservation, through any lands held by an Indian tribe or nation in the former Indian Territory, through any lands reserved for an Indian agency or Indian school, or for other purpose in connection with the Indian service, or through any lands which have been allotted in severalty to any individual Indian under any law or treaty, but which have not been conveyed to the allottee with full power of alienation, upon the terms and conditions herein expressed. No such lines shall be constructed across Indian lands, as above mentioned, until authority therefor has first been obtained from the Secretary of the Interior, and the maps of definite location of the lines shall be subject to his approval. The compensation to be paid the tribes in their tribal capacity and the individual allottees for such right of way through their lands shall be determined in such manner as the Secretary of the Interior may direct, and shall be subject to his final approval; and where such lines are not subject to State or Territorial taxation the company or owner of the line shall pay to the Secretary of the Interior, for the use and benefit of the Indians, such annual tax as he may designate, not exceeding $5 for each ten miles of line so constructed and maintained; and all such lines shall be constructed and maintained under such rules and regulations as said Secretary may prescribe. But nothing herein contained shall be so construed as to exempt the owners of such lines from the payment of any tax that may be lawfully assessed against them by either State, Territorial, or municipal authority; and Congress hereby expressly reserves the right to regulate the tolls or charges for the transmission of messages over any lines constructed under the provisions of this section: Provided, That incorporated cities and towns into or through which such telephone or telegraphic lines may be constructed shall have the power to regulate the manner of construction therein, and nothing herein contained shall be so construed as to deny the right of municipal taxation in such towns and cities.

-3-

is assessed on 100 percent of the actual value of the possessory interest as determined by the Tribal Tax Commission (Tax Commission). Tribal Tax Code § 706(3). According to the Tribal Tax Code, any person or entity interested in challenging the Tax Commission's assessment or determination of exemptions or refunds must first initiate an administrative appeal to the Tax Commission. Tribal Tax Code § 502. Appeals from final actions of the Tax Commission may then be made to the tribal court, but such appeals are conditioned upon prepayment of the taxes assessed by the Tax Commission. Tribal Tax Code § 506(1).

Under tribal law, the Cooperatives' property interests situated within the Reservation are subject to the possessory interest tax and to the Tax Code's remedies and appeal provisions. Accordingly, in January 1992, the Tax Commission sent the possessory interest tax forms to the Cooperatives with a letter indicating the Tribes' intent to collect the taxes. Subsequently, the Tribes sent a notice to the Cooperatives setting May 30, 1992, as the deadline for filing possessory interest tax returns.

On May 28, 1992, in an attempt to avoid paying the taxes, the Cooperatives filed an action for declaratory judgment in the United States District Court for the District of North Dakota. The Cooperatives asserted various grounds for invalidation of the tribal tax,[3] and sought to enjoin the Tribes from enforcing the tax. The district court initially stayed the action pending our decision in Duncan Energy Co. v. Three Affiliated Tribes of the Fort Berthold Reservation, 27 F.3d 1294 (8th Cir. 1994), cert. denied, 115 S. Ct. 779 (1995), a case involving a challenge to the

---

[3]The Cooperatives alleged that: 1) the tribal tax was preempted by the 1901 Act; 2) the Tribes lacked express Congressional delegation to tax the telephone interests; and 3) the taxing ordinance violated the Equal Protection, Due Process, and Commerce Clauses of the United States Constitution. Only the preemption argument has been raised on appeal.

-4-

very possessory interest tax at issue in this case. Upon receiving our decision in Duncan Energy, the district court again stayed the action. The district court held that Duncan Energy required the Cooperatives to present their arguments to the tribal court before the federal court action would be allowed to proceed. Shortly thereafter, upon a motion by the Cooperatives, the district court amended its stay order to provide instead that the case be dismissed without prejudice pending exhaustion by the Cooperatives of their tribal remedies. This appeal followed.[4]

## II. DISCUSSION

The Cooperatives argue that the district court erred in requiring them to exhaust their tribal remedies. They contend that this action falls under one of the exceptions to the exhaustion doctrine first recognized in National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985). We disagree with the Cooperatives' interpretation of the pertinent exception and hold that the Cooperatives are required to exhaust their tribal remedies before pursuing their claims in federal court.

The rule requiring exhaustion of tribal remedies in matters related to reservation affairs is an important aspect of the federal government's longstanding policy of supporting tribal self-government. See, e.g., National Farmers Union, 471 U.S. at 856; Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 14 (1987). Tribal courts play a vital role in tribal self-government, and respect for that role requires, as a matter of comity, that examination of issues of tribal sovereignty and jurisdiction be conducted in the

---

[4]Prior to oral argument in this case, the Tribes moved to dismiss this appeal for lack of an appealable order. An administrative panel of this court denied the Tribes' motion. On appeal, the Tribes renewed the arguments asserted in their motion to dismiss. We now reaffirm our earlier administrative decision and find that we have jurisdiction to hear an appeal from the district court's order of dismissal.

first instance by the tribal court itself.  See National Farmers Union, 471 U.S. at 856; Duncan Energy, 27 F.3d at 1299.

In accordance with these principles, the United States Supreme Court has recognized few exceptions to the general requirement of exhaustion of tribal remedies.  In National Farmers Union, the Supreme Court enumerated these exceptions, stating that exhaustion would not be required "where an assertion of tribal jurisdiction `is motivated by a desire to harass or is conducted in bad faith,' or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."  National Farmers Union, 471 U.S. at 856 n.21. (internal citations omitted).  Barring the presence of one of these exceptions, a federal court should stay its hand in order to give tribal forums the initial opportunity to determine cases involving questions of tribal authority.  Iowa Mutual, 480 U.S. at 15-16.

We recently followed the rule of exhaustion in Duncan Energy.  There, oil and gas companies brought a federal action to challenge the Three Affiliated Tribes' power to enforce their possessory interest tax and certain employment regulations against nontribal members on non-Indian fee lands.  The companies asserted that exhaustion of tribal remedies was not required in their case, claiming that the Supreme Court's decisions in National Farmers Union and Iowa Mutual were inapplicable to cases involving fee lands.  Duncan Energy, 27 F.3d at 1300.  We rejected the companies' narrow interpretation of the exhaustion doctrine and held that the companies were required to exhaust their tribal remedies before challenging the validity of the tax and employment ordinances in a federal action.  Id. at 1300.

The Cooperatives do not dispute the general contours of the exhaustion doctrine, but argue that the doctrine is inapplicable in this case.  The Cooperatives contend that the language of the 1901

-6-

Act preempts tribal authority to tax telephone interests on Indian reservations, and therefore the Tribes' endeavor to tax the Cooperatives' telephone lines and rights-of-way is an "action" violative of an "express jurisdictional prohibition[]" which, under National Farmers Union, exempts the Cooperatives from the requirement of exhaustion. The Cooperatives further assert that Duncan Energy is distinguishable from this case, since the plaintiffs in Duncan Energy did not present a preemption argument or attempt to position their case under one of the exceptions to exhaustion. The Cooperatives instead seek to align their case with Blue Legs v. United States Bureau of Indian Affairs, 867 F.2d 1094 (8th Cir. 1989), and Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community, 991 F.2d 458 (8th Cir. 1993). In both of these cases, the plaintiffs claimed that certain tribal actions were preempted by federal law, and we held that the suits could proceed without exhaustion of tribal remedies. These cases, the Cooperatives contend, support the conclusion that federal preemption of tribal authority to tax telephone interests places their claim squarely within the second exception to the exhaustion doctrine.

We find the Cooperatives' reading of the National Farmers Union language exempting from exhaustion "action[s] . . . patently violative of express jurisdictional prohibitions" both incongruous and inconsistent with the policy of tribal self-governance underlying the exhaustion doctrine. A plain reading of National Farmers Union demonstrates that this exception refers to specific prohibitions on designated tribal remedies or to prohibitions on a tribal forum's assertion of jurisdiction over a dispute. The exception does not, as the Cooperatives contend, address express jurisdictional prohibitions on the underlying tribal enactment which forms the basis of the plaintiff's challenge in federal court. The Cooperatives' interpretation of the express jurisdictional prohibition exception would render the exhaustion requirement virtually meaningless, allowing a tribal court to

assert jurisdiction over an action only after a federal court had effectively determined the merits of the case. Such an interpretation runs contrary to the Supreme Court's admonition in National Farmers Union that the orderly administration of justice in the federal courts is best served by "allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." 471 U.S. at 856. As the district court in this case aptly observed, if a federal court "accepts the reasoning that a party does not have to exhaust tribal remedies in a case where the party says the underlying tribal action is preempted, there will never be an exhaustion rule." Reservation Telephone Coop. v. The Three Affiliated Tribes of the Fort Berthold Reservation, No. A1-92-111, mem. op. at 3 (D.N.D. Feb. 1, 1995). Rather than accept that reasoning, we find, as other courts have, that the appropriate inquiry at this stage of the litigation is whether a tribal forum's assertion of jurisdiction, or any other designated remedy, violates an express jurisdictional prohibition and thus precludes exhaustion. See, e.g., Texaco, Inc. v. Zah, 5 F.3d 1374 (10th Cir. 1993).

Contrary to the Cooperatives' assertion, our decisions in Blue Legs and Northern States Power support this approach. In those cases, this court excused the plaintiffs from exhaustion not because a tribe's exercise of authority over an activity was preempted by federal law--although it might have been--but because the very tribal remedies which the plaintiffs would have had to exhaust before challenging tribal authority in federal court were preempted by express statutory provisions. In Blue Legs, for example, tribal members sued their tribe and the Bureau of Indian Affairs in federal court for failing to maintain Reservation garbage dumps in conformity with the federal Resource Conservation and Recovery Act of 1976 (RCRA). We rejected the tribe's argument that the plaintiffs must first bring suit in tribal court, noting that the RCRA placed exclusive jurisdiction for suits brought under

-8-

the RCRA in the federal courts. Blue Legs, 867 F.2d at 1097-98. In Northern States Power, the operators of a nuclear plant brought suit against the tribe arguing that tribal ordinances regulating nuclear materials were preempted by the Hazardous Materials Transportation Act (HMTA). The tribal ordinances required that nuclear transporters file an application for a tribal transporting license within 180 days of each nuclear shipment, and set forth a licensing review process. Northern States Power, 991 F.2d at 459. The HMTA, however, contained a provision which specifically preempted tribal requirements creating "an obstacle to the accomplishment" of the goals of the HMTA. Id. at 460-61. We held that the remedies set forth in the tribe's license application process created such obstacles and were therefore preempted. Because these remedies were preempted, we found nothing left for Northern States Power to exhaust. Id. at 463.

The federal acts at issue in both Blue Legs and Northern States Power, therefore, expressly addressed conflicts between tribal remedies governing particular subject areas and corresponding federal policies governing those areas. Because both Acts expressly prohibited the particular tribal remedies, exhaustion of those remedies was not required. In contrast, the 1901 Act contains no provisions which prohibit designated tribal remedies or reflect a preference for initial adjudication of telephone interest tax disputes in a federal forum. Nothing in the 1901 Act places an "express jurisdictional prohibition[]" on assertion of jurisdiction in this case by either the Tribal Tax Commission or the tribal court. Thus, this action cannot fall within the second exception to the exhaustion doctrine.[5] We hold

_____

[5]We also disagree with the Cooperatives' suggestion that the 1901 Act so obviously preempts a tribal tax on telephone interests that exhaustion in tribal court would be futile or a waste of resources. We note, however, that even if the tax itself were clearly preempted, nothing in Supreme Court precedent indicates that such a case would be exempt from exhaustion. Even in an instance of clear preemption of an underlying tribal enactment,

-9-

that <u>Duncan Energy</u> controls this action and requires the Cooperatives to exhaust the administrative and adjudicative remedies outlined in the Tribal Tax Code before presenting their preemption arguments to a federal court.

## III. CONCLUSION

For the reasons stated above, we affirm the decision of the district court dismissing this case pending exhaustion of tribal remedies by the Cooperatives.


A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

principles of comity would arguably support a rule which gives a tribal court the first opportunity to declare the law invalid. Nevertheless, we need not decide this issue at this juncture because we do not find the 1901 Act to present such a case.