*67 ORDER DENYING TRO
B.J. JONES, Deputy Judge.
ACTION
The Plaintiffs—Elizabeth Sherman, Sandra Nichols, Vikki Howard, and Harry Greene—have filed a civil petition with this Court seeking a Temporary Restraining Order (TRO) against Defendant, Enbridge Energy, LLC (Enbridge), from constructing the proposed “Alberta Clipper Pipeline and Southern Diluents Pipelines” across and within the boundaries of the Leech Lake Reservation. Hearing was held on the 14th day of August 2009 with the Plaintiffs appearing to represent themselves and the Defendant appearing through Randy Thompson, Attorney at Law. At hearing the Court permitted argument from both sides and also took testimony from Petitioner Sherman.
Numerous legal arguments were posited for debate at hearing including: Dwhether the Plaintiffs have standing to bring this action; 2)whether this Court has jurisdiction over this dispute or did the Leech Lake RBC and the Defendant deprive this Court of jurisdiction by stipulating to arbitration with enforcement authority in another forum; 3) whether federal law preempts this Court’s exercise of subject matter jurisdiction; 4) whether the Leech Lake Band is a necessary party to this action and if so whether it can be joined in this action because of its sovereign status and whether it has waived its sovereign immunity by stipulating to arbitration in the contract with the Defendant (and secondarily whether that waiver can be extended to this suit); 5) whether the referendum process, permitted by the Minnesota Chippewa Tribal Constitution, permits Leech Lake Band members to petition their government to rescind a contract already executed with a private party, and if so does that right conflict with the Indian Civil Rights Act, 25 USC 1301 et seq.; 6) whether the Plaintiffs, if they do possess standing and this Court docs have subject matter jurisdiction over the dispute and personal jurisdiction over the Defendant, have demonstrated that they will suffer irreparable harm that is imminent should this Court not grant preliminary injunctive relief and whether they have made a sufficient showing of a probability of success on the merits to warrant preliminary injunctive relief.
The Court concludes that the Plaintiffs do have standing as petition signers and Band members, not as landowners, whose interests may be harmed by the actions of the Defendant. The Court further *68 concludes that this Court has some limited jurisdiction in this action to determine the effect of a pending referendum petition submitted to the Leech Lake RBC on the contractual rights of the Defendant to proceed with the pipeline project and that the contract between the RBC and the Defendant does not deprive this Court of jurisdiction over this discreet issue.[1] The Court also concludes that at this point in this litigation the Leech Lake Band is not an indispensable party to this dispute because the issue of the impact of a successful referendum overturning the RBC’s approval of the pipeline project is too speculative for the Court to address at this time. Should the RBC approve of the referendum and the members vote to disaffirm the RBC action, the Court would have to address the issue of the indispensability of the Leech Lake Band in this litigation.
Lastly the Court concludes that the Plaintiffs have failed to make a sufficient showing to warrant the issuance of a temporary restraining order because there is no showing of irreparable harm because the Defendant cannot take any action on the pipeline until the Secretary of State and the Department of Interior approve of the rights of way and permits. Therefore the Court denies the application for a temporary restraining order.
FACTS OF THE CASE
Since 1949 the Leech Lake Band of Ojibwe (LLBO) has provided Enbridge a right-of-way for the installation and operation of Enbridge’s underground interstate and international liquid petroleum pipelines (the “Existing ROW”) across properties owned by LLBO within the Leech Lake Reservation. (Resolution No.2009-170 at 1).
On March 13, 2009, the Leech Lake Reservation Business Council (LLRBC) formally adopted Resolution No.2009-122, which declared LLRBC will grant all necessary permits and leases for renewal and expansion of the Existing ROW for a term of 10 years plus 10 years for Enbridge to construct the Alberta Clipper Pipeline and Southern Diluents Pipelines across the Leech Lake Reservation as presently planned. Id. at 2. The Leech Lake Tribal Council passed Resolution No.2009-170 on May 14, 2009, which accepted the terms between Enbridge and LLBO for renewal and expansion of easements and right-of-way for 10 years plus 10 years lease to Enbridge. (Id.). The Resolution contains seven additional pages further accepting specific terms of the agreement for renewal of the existing right-of-way license and issuance of a new right-of-way license on Leech Lake Band property, which; 1.) set *69 out certain dates and specific timelines for payments from Enbridge to LLBO; 2.) provide for certain environmental practices and protocols within the Reservation boundaries[2]; and 3.) waiving of particular legal defenses by LLBO and venue provisions. Id. (Emphasis added).
RULE OF LAW
In order to grant the Plaintiffs a temporary restraining order they must demonstrate that they will suffer irreparable harm without the issuance of a temporary restraining order, that the issuance of the order is not outweighed by the harm to the Defendant and the tribal community by the issuance of such an order, and that they have shown a probability of success on the merits of their complaint. This Court must also find that it has jurisdiction over this dispute for it to issue any type of relief in this case. Jurisdiction would include a finding that the Plaintiffs have standing to bring this action and that this Court may exercise jurisdiction over this dispute under the United States Supreme Court’s decisions discussing tribal jurisdiction over non-Indian litigants. See Plains Commerce Bank v. Long Family Land & Cattle Co., 552 U.S. 1087, 128 S.Ct. 829, 169 L.Ed.2d 626 (2008). For tribal jurisdiction to lie under Plains Commerce Bank the Plaintiffs would have to demonstrate that the dispute does not pertain to fee land and that the Defendant has entered into a consensual relationship with the Band or its members and that the legal dispute pertains to that consensual relationship. The Court could also sustain jurisdiction if it is demonstrated that the Defendant’s action “threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).
The issue before this Court does not really involve an analysis of jurisdiction under Plains Commerce and Montana, as it clearly appears to this Court that the first prong of the Montana standard is met here because the Defendant entered into a consensual relationship with the Band for the project and, although the pipeline would go through certain fee lands, the pipeline would traverse tribal trust land and allotted lands thus taking it out of the Plains Commerce exception to the Montana test. However, the agreement creating the consensual relationship between the Band and the Defendant expressly vests jurisdiction in the state and federal courts to enforce any arbitration award to either party arising from a dispute under the agreement. This appears to the Court to be a clear intent on the part of the RBC to limit this Court’s jurisdiction over any causes of action arising from the agreement between the Band and the Defendant.
To the extent, however, that the Plaintiffs assert that the Defendant is proceeding with a pipeline project when there is a possibility of a referendum void disaffirm-ing the agreement between the Band and the Defendant, it does not appear to the Court that the agreement between the LLBO and the Defendant has divested this Court of jurisdiction. The issue of whether the Band members can disaffirm the agreement between the Band and the Defendant by referendum vote would not be an issue left to arbitration between the Band and the Defendant, but instead *70 would involve an interpretation of the MCT Constitution something this Court is uniquely qualified to do.[3] This Court concludes that it has the jurisdiction to interpret the impact of such an election and also to address whether such an election could disaffirm the pipeline agreement between the Band and the Defendant. This Court has already ruled in LaRose v. LLRBC that it has the jurisdiction to determine the legal impact of a referendum petition in the context of a recall effort against Archie LaRose.
It is on this limited issue that the Court finds the Plaintiffs possess standing. In order to have standing, a plaintiff must show that: (I) it has suffered an “injury in fact” that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). All four Plaintiffs have indicated that they have signed the petition seeking a referendum election to overturn the Band’s actions in approving of the pipeline project. They contend that the project should not go forward with the possibility of a referendum action vitiating the agreement. The Plaintiffs, as Band members, have a constitutional right under Article XIV, Section 2 of the MCT’s revised Constitution to petition their government for redress should the government take action they disapprove of. Hypothetically, if the petition for referendum pending before the RBC is approved and the vote rejects the pipeline agreement, the Plaintiffs would have standing to argue that the pipeline should not go forward under the MCT Constitution.
The Defendant argues that even should the referendum petition be accepted by the RBC, and the result of the election is to invalidate the pipeline agreement, the vote would be of no legal import to the Defendant because it would not be binding upon it because the LLBO members cannot impair an executed contract between the Band and the Defendant. Therefore, it contends that it is not the real party in interest in this case. The Court docs not feel the need to address this issue at this point because any resolution of the issue would be an advisory opinion only because the issue is not concrete at this point because it is based upon speculation and assumption. The Court does not know if the petition submitted to the RBC is legally sufficient and whether the RBC will permit an election on the issue. Courts only have jurisdiction to resolve actual controversies and not those based upon assumption and speculation. Should the petition not be accepted or is accepted resulting in a vote to overturn the RBC’s agreement with the Defendant, the issue would be ripe for resolution. The Defendant’s contention that the election would not be binding upon it because the Band cannot legally impair a contract without running afoul of the Indian Civil Rights Act is another potential hurdle the Plaintiffs would have to overcome in order for their action with this Court to be successful.[4]
*71 The principal reason that this Court denies the request for a temporary restraining order is due to the Plaintiffs’ failure to show that they are about to suffer irreparable harm should the Court not act and that this harm outweighs any harm to the Defendant and the Band itself were the Court to grant a temporary restraining order. The pipeline that the Plaintiffs seek to stop is still at its preliminary stages of planning and is not about to be undertaken. The “Alberta Clipper and Southern Diluent” pipelines (Pipeline Project) arc strictly regulated by federal environmental law, mandating oversight by federal and state regulatory bodies, such as: 1) the United States Department of State, because the project traverses the Canadian/United States border; 2) the federal Pipeline Safety Act; 3) the Oil Pollution Act of 1990; 4) the United States Department of Transportation; 5) the Occupational Safety and Health Administration; 6) the United States Environmental Protection Agency; 7) the Minnesota Office of Pipeline Safety; and 8) the Minnesota Pollution Control Agency; and the United States Department of Interior.
It is undisputed that the Secretary of State and the Department of Interior have not approved of the project up to this point. Indeed, it is not even clear to this Court that the Department of Interior has even gotten the permission of the allotted landowners with interests in lands over which the pipeline will run.[5] The referendum petition that has been submitted to the RBC has not yet been approved and certainly no vote has been taken by the Band members to overturn the RBC’s agreement with the Defendant. In addition it is clear to this Court that the RBC had the legal authority to act on behalf of the Band when it entered into the agreement.
The Tribal Executive Committee and the Reservation Business Committees are the authorized governing bodies of the LLBO. Minnesota Chippewa Tribal Constitution, Article III. (Emphasis added). The Reservation Business Committees shall have the power
“to consult, negotiate and contract and conclude agreements on behalf of its respective Reservation with Federal. State and local governments or private persons or organizations on all matters within the power of the Reservation Business Committee, provided that no such agreements or contracts shall directly affect any other Reservation or the Tribal Executive Committee without their consent. The Business Committees shall be authorized to manage, lease, permit or otherwise deal with tribal lands, interests in lands or other tribal assets.”
Id. at Article VI, § 1(c). (Emphasis added). “Except for those powers hereinafter granted to the Reservation Business Committees, the Tribal Executive Committee shall be authorized to manage, lease, permit, or otherwise deal with tribal lands, interests in lands or other tribal assets ...” Minnesota Chippewa Tribal Constitution, Article V, § 1(f). (Emphasis added).
*72 Nothing in the MCT Constitution requires the RBC to take controversial issues to the Band members prior to taking action. Band members do have the right to seek to overturn RBC actions that they disagree with, but nothing in the MCT Constitution puts that right ahead of the legislative action.
This Court has issued an Administrative Order, specifically addressing the protocol for filings of petitions to obtain a Temporary Restraining Order under Title 1, Rule 41.B of the LLBO Tribal Code. The Order states in part that this Court “will not accept petitions seeking Harassment Restraining Orders or Orders for Protection until such time as these causes of action arc provided for in the Leech Lake Judicial Code.” (ADM-09-0001, July 7, 2009). Temporary Restraining Orders shall be granted by the tribal court “when it appears from a pleading that a party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure the party ... in violation of the rights of another party.” LLBO Judicial Code, Title 2: Part VII, Rule 41.B. (Emphasis added). The Plaintiffs at this point have not made a sufficient showing under this Court rule to justify a restraining order.
This Court is also not convinced that the Plaintiffs have made a sufficient showing of a probability of success on the merits of their complaint. Although it appears that they have submitted a petition to the RBC with signatures of 20% of the resident eligible voters of the Band affixed, that petition has not been scrutinized for its validity. In addition, all Band members, including off-reservation members, get to vote on the issue should the petition be legally sufficient. The Court certainly understands and respects the good faith beliefs of the Plaintiffs that this pipeline project will be harmful to the reservation and its residents, but this Court’s jurisdiction appears to be limited to the referendum issue. This Court serves as a last resort after all administrative and constitutional remedies have been exhausted. While the judicial power of the Tribal Court shall extend to “all matters and actions within the power and authority of the LLBO including controversies arising out of ... resolutions ... enacted by the Reservation Tribal Council”, there are far too many uncertain issues that remain unresolved for this Court to exercise any jurisdiction it may have at this point.
The Court will therefore deny the application for a temporary restraining order. This case will not be dismissed at this time, however, because it does appear that this Court may have some limited jurisdiction on the referendum issue once, and if, that issue ever becomes ripe for resolution.
WHEREFORE, based upon the foregoing analysis the request for a Temporary Restraining Order is hereby DENIED. Any further proceedings in this case shall be held in abeyance pending RBC review of the referendum petition and any subsequent actions on that petition.

. The Court leaves to another day the issue of whether federal law preempts the Court’s exercise of jurisdiction over this dispute because the Parties have not been given the opportunity to fully brief the issue and because of the Court's finding that the issue is not yet ripe for consideration because neither the Bureau of Indian Affairs nor the Secretary of State have granted permission for the pipeline project. Should both of those federal agencies approve of this project, however, federal law may very well preempt this Court's exercise of jurisdiction over a dispute regarding the merits of the project itself. See Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community, 991 F.2d 458, 462 (8th Cir.1993)(tribe preempted from exercising regulatory authority over the interstate transportation of nuclear material); AT & T Corp. v. Coeur D'Alene Tribe, 295 F.3d 899 (9th Cir.2002), That preemption analysis would not probably bar this Court’s exercise of jurisdiction over the interpretation of the MCT Constitution, however, as that would be an exclusively tribal court prerogative. See Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1300 (8th Cir.1994)(challenges to interpretations of tribal law and constitution must be heard first in a tribal court).

. It appears from the record that additional environmental requirements were imposed upon the Defendant by the present RBC after it received a report from the Leech Lake Division of Resource Management raising environmental concerns with the project. This report was offered into evidence by the Plaintiffs as Exhibit 2.

. Title 2:Rule 10.A. Article XIV of the Constitution provides the right of tribal members to petition either the Tribal Executive Committee or the Reservation Business Committee in regards to "any enacted or proposed resolution or ordinance to a referendum of the eligible voters . .. the majority of the votes cast in such referendum shall be conclusive and binding.”

. The United States Constitution prohibits the federal government from taking any action to *71 impair obligations of contract. This Court notes that a similar prohibition is not found in the Indian Civil Rights Act, 25 USC § 1302, although there is a prohibition against a Tribe taking the property rights of another without due process of law or just compensation. Whether a vote to overturn the pipeline agreement would violate the ICRA is a question left to another day.

. The Plaintiffs produced several newspaper ads wherein the Defendant is still seeking to locate heirs of allottees on the Fon Du Lac reservation to approve of its right of way requests.